## Polley et al. v. Cline et al.

Dec. 8, 1939.

J. J. Moore and Henry J. Scott for appellants.

Stratton & Stephenson and Steele & Vanover for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

A history of this litigation and the facts out of which it arose are set forth in our opinions delivered on the two preceding appeals reported in 272 Ky. 147,

113 S. W. (2d) 1133, and 263 Ky. 659, 93 S. W. (2d), 363. Three juries have found by their verdicts that the undated instrument probated on January 9, 1933, as the will of Mary Ford Cline is a forgery, and, as on the first and second appeals, we are asked to reverse the judgment of the Trial Court on the grounds that the verdict is flagrantly against the weight of the evidence and that incompetent testimony was admitted by the Trial Court. In addition, it is complained on this appeal that portions of the argument of appellees' counsel to the jury were improper.

It is urged by appellants that since on the first appeal we held the verdict to be flagrantly against the evidence and the evidence on the last trial was substantially the same as on the first trial, it is our duty to again reverse the judgment on that ground. Our attention is called to the fact that Section 341 Civil Code of Practice which provided among other things that not more than two trials should be awarded an unsuccessful litigant on the ground that the verdict of the jury was not supported by sufficient evidence, was repealed by Chapter 27 of the Act of the 1936 Legislature and it is argued that this Court's discretion in awarding new trials on the ground referred to is now unlimited. But this provision of the Code which became effective in January, 1877, was merely declaratory of the then prevailing rule as to the effect to be given three similar verdicts rendered on a given state of facts (Louisville & Nashville Railroad Co. v. Graves' Assignee, 78 Ky. 74; Louisville & Nashville Railroad Company v. Daniel, 131 Ky. 689, 115 S. W. 804, 1198, 119 S. W. 229), and, while the action of the Legislature in repealing the limitations upon the powers of this Court embraced in Section 341 is significant and must be regarded as expressing the legislative will that this Court exercise, whenever, and as often as may be necessary, the inherent power vested in it to prevent wrong and oppression arising in the course of judicial proceedings, it does not follow that we should fail to give great weight to the finding of three successive juries on an issue submitted for their determination under proper instructions. Hence, notwithstanding the repeal of Section 341 of the Code, and a ruling of this Court that the first of three successive jury verdicts on the same issue was flagrantly against the weight of the evidence, we may, without doing violence to the Law of the Case Rule, properly decline to reverse the judg-

ment entered on the last verdict where additional evidence of probative value has been introduced, even though the effect of the added evidence is but to weaken the creditability of a witness, reliance upon whose testimony was essential to the conclusion arrived at by this Court on the first appeal.

A careful examination of the records before us discloses that the testimony introduced at the last trial was not identical with the testimony introduced at the trial in which the first verdict declaring the will to be a forgery was rendered. True, no additional witness testified that the signature of the deceased attesting witness, Trimble, was forged, but, J. E. Polley, the only actual living witness to the transaction, testified that the alleged will was executed on Monday, November 2, 1931, whereas, on the other trials he had testified that the will had been executed on the preceding Friday or Saturday, the significance of which is apparent when it is observed that the alleged will and its attestation were undated and it had been conclusively established that the testatrix did not return from Cincinnati, where she had undergone an operation, to her home in Pikeville, where, it is claimed, the will was executed, until Sunday, November 1st. Added significance is attached by the fact that Polley admitted under cross-examination on the first trial that he had stated to P. B. Stratton that he knew the date on which the will was executed, but did not think he should discuss it until he got on the stand—"I knew he (Mr. Cline) kept a diary and I knew it would probably be fixed to fit the evidence, something near that." Moreover, Mrs. Elizabeth Whitman, who did not testify on the first trial, testified that she had never seen Polley or Trimble at the home of testatrix, although she had visited testatrix on several occasions during her last illness. Mrs. Whitman was a friend and neighbor of the testatrix, and was one of the two women whom Polley said he thought he saw coming into the home of testatrix, causing him and Trimble to leave the house hurriedly after having witnessed Mrs. Cline's will. Two or three other witnesses who did not testify on the first trial were introduced by appellees at the last trial, and while we cannot say that, taken separately, the testimony of these additional witnesses was controlling, neither can we say that their testimony considered in connection with the contradictions developed in Polley's testimony did not weaken the creditability of Polley on whose

truthfulness the case for the propounders is necessarily predicated. On the second appeal of this case we said [272 Ky. 147, 113 S. W. (2d) 1135]:

> "Appellants' contention that there was not sufficient evidence to take the case to the jury, and that they should have been peremptorily instructed to find the second will to be the last true will of Mary Cline, cannot be sustained. They insist that the evidence is practically the same as on the former trial, and, at least, the verdict is flagrantly against the evidence. The appellees insist, on the other hand, that there was additional evidence on the last trial tending to discredit the testimony of J. E. Polley and Mrs. Hilda F. Coleman, appellants' chief witnesses, and other evidence not introduced at the former trial which is sufficient to sustain the verdict. Since the judgment must be reversed for the reason heretofore indicated, we refrain from passing upon the sufficiency of the evidence."

Our conclusion on this branch of the case is that we would not be justified in reversing the present judgment on the ground that the evidence introduced is insufficient to support the verdict.

The testimony which appellants' counsel claim was improperly admitted at the last trial had been admitted at the preceding trial over appellants' objection, and the judgment was reversed by this Court solely on the ground that the trial Court had erred in awarding the burden of proof, although one of the grounds urged by the appellants for a reversal was the alleged incompetency of the testimony referred to. In holding the testimony competent we said:

> "Some complaint is made of certain evidence which was admitted over appellants' objections, but, in view of the wide latitude allowed in will cases we think it was within the permissible limits."

We have examined with care the portions of the argument by appellees' counsel to which appellants object, and have failed to find any indication that they were actuated by an improper motive. True, the sole issue which the jury had to decide was whether the will in controversy was a forgery, but the facts surrounding the execution of the previously executed and admittedly genuine will had been admitted in evidence, and, as in all will contests, the testimony had covered a wide range.

Moreover, the Court, during the argument, repeatedly admonished the jury as to the actual issue presented to it for decision, and we cannot say in view of these admonitions that the statements complained of were prejudicial.

Judgment affirmed.